(21 App. Div. 395.)

## CAMERON v. WRIGHT.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. SALE—CONDITIONAL ACCEPTANCE.
   One who makes an offer is not bound by an acceptance which is conditional.

2. SAME—RIGHTS OF SELLER.
   If one accepts an offer unconditionally, and then notifies the other party that, owing to uncertainty, he will await further information before confirming his acceptance, the other party is justified in disregarding that acceptance and acting accordingly.

3. APPEAL—REVERSAL—ENTRY OF JUDGMENT.
   Where, in reversing on appeal a judgment for plaintiff, it appears from the record that the entire correspondence on which the cause of action is based is contained therein, that the parties never saw each other, that all the negotiations were comprised in that correspondence, and that no additional proof can be offered, held, that the complaint should be dismissed, and judgment entered for defendant.

Appeal from trial term.

Action by Roderick W. Cameron against Ammi W. Wright. From a judgment entered on a verdict, and an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

John E. Parsons, for appellant.

E. W. Tyler, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages caused by the alleged neglect and refusal of the defendant to deliver certain stocks according to contract. The answer was a general denial. The whole negotiations between the parties were conducted by letter and telegram, the defendant being at Alma, Mich., and the plaintiff in the city of New York.

On the 24th of February, 1892, the plaintiff wrote to the defendant as follows:

"24th February, 1892.

"A. W. Wright, Esq., Alma, Mich.—Dear Sir: Mr. Boardman has reported to me the result of yesterday's meeting at Baltimore, which has determined me to ask if you prepared to name a price at which you will purchase my North Star stock, or sell me your holding, in either case giving or taking a thirty days' refusal. My holding is but fifty thousand dollars, whilst that of yourself and associates foots up about two hundred thousand. Should I accept your offer to sell, I would expect to be paid in cash on the delivery within 30 days from receipt and acceptance of offer. The same terms to hold good providing I should elect to purchase. My present intention is to go to England at an early date (on business connected with my firm's affairs). I would therefore respectfully request an early reply to this, and remain,

"Yours, very truly,      [Signed] R. W. Cameron.

"P. S. I mail duplicate of this letter addressed to Messrs. Wright & Wells, Saginaw."

On the 29th of February, 1892, the defendant wrote to the plaintiff as follows:

"Alma, Mich., Feb. 29, 1892.

"Sir R. W. Cameron, 23 South William Street, New York—Dear Sir: I have your valued communication of the 24th inst., and in reply beg to say that, before receiving your letter, I had already said to some parties interested in the Construction Co. that my stock was for sale; but same has not been offered to any one not already interested in the company. I would not care to give any one an option to buy it, but will say that I will sell same to you for thirty-three cents on the dollar; but this offer is not to exclude any one else to whom I have spoken, in case they should conclude to buy before you make up your mind. This would include all the holdings of the Saginaw parties, amounting in all to something like 178 M. I would not care to purchase your holdings, since I have not the time to give to the enterprise which it seems to demand, and have concluded to retire from it as soon as satisfactory arrangements to that end can be made; and this offer to you has that end in view. Will you kindly consider this, and give me a reply at your early convenience.

"Yours, truly,      A. W. Wright."

On the 2d of March, 1892, the plaintiff wrote to the defendant as follows:

"2d March, 1892.

"A. W. Wright, Esq., Alma, Mich.—Dear Sir: I am this a. m. favored with your reply to my letter of the 24th ulto. I thank you for your frank admission as to value. In the interest of the bondholders, as well as of the remaining stockholders, in the N. S. C. Co., I would ask that you would not put your stock on the market until such time as we here may have time to determine upon future action. This will require not less than ten to fourteen days from this date. I am,

"Very respectfully, yours,      [Signed] R. W. Cameron."

On the 5th of March, 1892, the defendant wrote to the plaintiff as follows:

"Alma, Mich., March 5, 1892.

"Sir R. W. Cameron, 23 S. William St., New York—Dear Sir: I beg to acknowledge your letter of the 2nd inst., asking that our stock may not be put on the market until you have had opportunity to determine future action. As advised in a former communication, we have already said to some of the stockholders that the stock was for sale; and hence, if called on to make a transfer at the price named, it would seem that we could not reasonably refuse to make the delivery. However, this may not transpire, and you have the same opportunity as others interested.

"Yours, truly,                A. W. Wright."

This letter of March 5th was not mailed until the 7th, and was not received by the plaintiff until the 9th.

On March 7th, prior to the receipt of the letter of March 5th, the plaintiff telegraphed to the defendant as follows:

"New York, March 7th, 1892.

"A. W. Wright, Alma, Mich.: Require twenty days' option on your stock price quoted. Reply.            R. W. Cameron."

Upon the receipt of this telegram, the defendant telegraphed to the plaintiff as follows:

"Alma, Mich., March 8, 1892.

"Sir R. W. Cameron, 23 S. William Street, New York: Telegram rec'd. See letter sent you Monday morning.         A. W. Wright."

This telegram was received on the same day as the letter of March 5th, namely the 9th. On March 11, 1892, the plaintiff sent the following night message to the defendant:

"March 11, 1892.

"A. W. Wright, Alma, Mich.: I accept offer thirty-three for all your stock draw three days' sight draft with stock attached. Answer promptly number of shares.             R. W. Cameron,
"810 Fifth Ave."

This telegram was received by the defendant on the 12th; and upon the same day the plaintiff wrote to the defendant the following letter:

"New York, 12th Mar., 1892.

"A. W. Wright, Esq., Alma, Mich.—Dear Sir: I wired you a message last evening, offering to purchase your stock, and asking a prompt reply, stating number of shares. Up to this hour no reply has been received. Mr. Baker now tells me that you offered the stock to Mr. Thom, the treasurer, at thirty, and that he made a counter offer of 10. At least, I so understood him as to the counter offer, but he was positive as to your offer at 30. There seems to be an all round uncertainty, and I therefore will await explanations before confirming my offer by wire.

"Yours, f'f'ly,              R. W. Cameron."

After writing such letter, and upon the same day, the plaintiff received the following telegram from the defendant:

"Received at 1059 Third Avenue, New York City, 6:42.

"Alma, Mich., March 12th, 1892.

"R. W. Cameron, 810 Fifth Ave.: Other parties negotiating for stock. Will advise you definitely Monday.         A. W. Wright."

The letter of March 12th (Saturday) seems to have been received by the defendant on the 14th (Monday); and upon the same day the defendant telegraphed to the plaintiff as follows:

"Saginaw, Mich., 14th March.

"R. W. Cameron, 810 Fifth Ave.: I have sold my North Star Construction Company stock. A. W. Wright."

The question presented is whether by the telegram of March 11, 1892, a contract was entered into between the plaintiff and the defendant for the sale of the stock. It is to be observed that these negotiations were initiated by the letter from the plaintiff to the defendant as to a purchase of the defendant's stock or a sale of the plaintiff's stock to the defendant, to be paid for in cash on delivery within 30 days from the receipt and acceptance of the offer; and that the answer to this proposition on the part of the defendant was that he had notified some parties interested in the company that his stock was for sale, but that it had not been offered to any one not already interested in the company, and that he would not care to give any one an option to buy it, but would sell the same to the plaintiff for 33 cents on the dollar, the offer, however, not to exclude any one else to whom he had spoken in case they should conclude before the plaintiff made up his mind. By the letter of the 2d of March, 1892, the plaintiff insisted that the defendant should not put his stock on the market until such time as the parties in New York might have time to determine upon future action, which would require not less than 10 to 14 days from date. Before receiving any reply to this letter, the plaintiff telegraphed to the defendant that he would require 20 days' option on the stock at the price quoted. The defendant had already written the letter of March 5th, which was mailed on the 7th, declining to give any option or to refrain from putting the stock on the market, stating that the plaintiff would have the same opportunity as others interested. Upon the receipt of the telegram of March 7th, the defendant telegraphed to the plaintiff on March 8th that his telegram was received, and referring to the letter of March 5th, mailed on Monday morning, the 7th. Two days after the receipt of this letter, the plaintiff sent the telegram of the 11th, which was a night message, and was not received until Saturday, the 12th, in which he says:

"I accept offer thirty-three for all your stock draw three days' sight draft with stock attached. 'Answer promptly number of shares." '

It is clear that this was not an absolute acceptance of the defendant's offer, but was an acceptance with a condition attached as to the method of payment. The defendant was not required to part with his stock until he was tendered payment therefor, and he was not required to go to New York for that purpose. The plaintiff knew where the defendant lived and where the stock was. He attempted to purchase this personal property, and, if he desired to accept the offer of the defendant, he was bound to accept it unconditionally, which he did not do. And, furthermore, it appears from this record that the plaintiff himself did not think this was a binding offer,—that, at least, he was not bound by it; and, if he was not

bound by it, it is clear the defendant could not have been. because on the very next day he writes to the defendant, saying:

"I wired you a message last evening, offering to purchase your stock, and asking a prompt reply, stating number of shares. Up to this hour no reply has been received. Mr. Baker now tells me that you offered the stock to Mr. Thom, the treasurer, at thirty, and that he made a counter offer of 10. At least, I so understood him as to the counter offer, but he was positive as to your offer at 30. There seems to be an all round uncertainty, and I therefore will await explanations before confirming my offer by wire."

Even though an absolute offer had been made, if this was not a retraction of the offer, it is difficult to see what the language used could have meant. It is apparent that the plaintiff did not consider himself bound by the telegram until it had been confirmed. In this letter, with the telegram fresh in his mind, he says that he had sent defendant a message offering to purchase the stock, and that there was uncertainty in regard to the defendant's attitude, and uncertainty all round, and that he would await explanation before confirming his offer by wire. Even if the offer had been a positive one, it is clear that there was an attempt upon the part of the plaintiff to retract it, which the defendant had a right to act upon. It appears that the defendant, on the 14th of March, sold his stock in the company at a price higher than that offered by the plaintiff. It is difficult to see how the defendant is to be held to a contract which the plaintiff was of the opinion that he had not made. There was no time during the course of this correspondence when the minds of the parties met as to price, terms of delivery, and payment. There were conditions attached by the plaintiff to every offer he made, he insisting up to the last minute in regard to the option; and then, when he finally attempts to accept the offer of the defendant, he dictates terms of payment other than those which the law would require, and immediately writes a letter construing the condition of affairs, and insisting that his offer required confirmation before it would be binding upon him. It is apparent under these circumstances that there was no meeting of the minds of the parties. They had not agreed upon the method of payment, even if there had been an agreement in regard to the price. The amount had not been ascertained, and the plaintiff did not consider himself bound by his offer, but, having heard some intimation that the stock had been offered to some one else at a lower price, he wanted to investigate, and insisted that his telegram required confirmation before it should be binding upon him. We do not see how, under these circumstances, any contract can be spelled out between these parties which would justify the plaintiff in bringing an action for damages occasioned by the breach thereof.

In view of the conclusion at which we have arrived, it becomes unnecessary to consider the numerous serious exceptions taken to the admission and exclusion of evidence, and to the charge of the court upon the question of the measure of damages. It appears from the record in this case that all the correspondence and telegrams between the parties are contained therein; that the parties never saw each other; that all their negotiations were comprised

within this correspondence; and that no additional proof can be offered. We are therefore of the opinion that not only should the judgment appealed from be reversed, with costs, but that the complaint should be dismissed, and judgment entered for the defendant, with costs. All concur.

<hr>

